IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

## LARRY CARPENTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hawkins County**
No. CC-17-CR-33      John F. Dugger, Judge

_____

### No. E2017-00589-CCA-R3-PC

_____

The Petitioner, Larry Carpenter, appeals from the Hawkins County Criminal Court's denial of his petition for post-conviction relief from his 2015 guilty pleas to attempted second degree murder and especially aggravated robbery, for which he is serving an effective twenty-year sentence. The Petitioner contends that (1) he received the ineffective assistance of counsel and (2) his guilty pleas were involuntary. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Whitney Bailey, Rogersville, Tennessee, for the appellant, Larry Carpenter.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; Dan E. Armstrong, District Attorney General; and Akiah Highsmith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case arises from the Petitioner's June 12, 2015 negotiated guilty pleas to attempted second degree murder and to especially aggravated robbery in exchange for an effective twenty-year sentence at 100% service. Two misdemeanor counts of fraudulent use of a credit card were dismissed pursuant to the plea agreement.

### Guilty Plea Proceedings

At the guilty plea hearing, the State's recitation of the facts was as follows:

On December 6th Larry and Amanda Carpenter went to their former neighbor's house, Robert Williams, under the pretense of selling Mr. Williams some oil. . . . Mr. and Mrs. Carpenter went into Mr. Williams' home and they began to talk. At some point the conversation turned from cordial to violent. Mr. Carpenter grabbed a wrench and struck Mr. Williams in the face. The violence then escalated when Carpenter grabbed a knife and slit Mr. Williams' throat in an apparent attempt on his life. While Mr. Williams lay in his home bleeding profusely, Mr. and Mrs. Carpenter began taking his property including his debit card, money and some medication. Mr. and Mrs. Carpenter exited the residence leaving Mr. Williams alone struggling to keep consciousness. The Carpenters then went to two separate businesses and used Mr. Williams' debit card at each location. Mr. Williams was unable to find his phone at his house so he eventually hobbled to a nearby neighbor's house. Once there, emergency medical personnel was notified and Mr. Williams was taken by ambulance to Morristown-Hamblen Healthcare System. . . . At the hospital, Mr. Williams' injuries were treated and he was eventually discharged.

At the guilty plea hearing, the Petitioner stated that he was age thirty-four, had obtained a GED, could read and write without difficulty, had no health conditions that would cause him not to understand the proceedings, and had not consumed alcohol or drugs within the previous twenty-four hours. The trial court reviewed the plea agreement with the Petitioner, including the charged offenses, the offenses to which he was pleading guilty, and the possible sentences he could receive. The Petitioner told the court that he understood the agreement. The court informed the Petitioner of the State's burden of proof at a trial and of the elements of the offenses to which he was pleading guilty, and the Petitioner stated he understood. The court reviewed the signed waiver of rights form with the Petitioner, and the Petitioner said that he had read it and had reviewed it with counsel. The Petitioner said he understood he had the rights to plead not guilty, to a jury trial, to have appointed counsel during the trial court proceedings, to confront and cross-examine witnesses, to present defense witnesses, and to remain silent. The Petitioner said that he understood the contents of the waiver of rights form and that he was pleading guilty because he was guilty. The Petitioner said that he was pleading guilty freely, voluntarily, and without force, threats, or pressure of any type.

The Petitioner told the trial court that he was satisfied with counsel's representation and had no complaints because counsel had done everything the Petitioner wanted. The Petitioner stated that he reviewed the discovery materials with counsel and felt comfortable entering his guilty pleas. The Petitioner stated that the State's factual recitation was "close enough" to what occurred during the offenses. Counsel stated that although the defense "would have differences on some of the finer points, . . . we would stipulate that would be the [State's] proof and that is essentially what happened."

-2-

On May 3, 2016, the Petitioner filed a post-conviction petition, alleging that he received the ineffective assistance of counsel and that his guilty pleas were involuntarily entered.

## Post-Conviction Proceedings

The Petitioner testified that he met with counsel three or four times before entering his guilty pleas and that they discussed the State's plea offer and the possible sentences if the Petitioner were convicted after a trial. The Petitioner said that he and counsel "skimmed through" the State's evidence and that counsel stated the forensic analysis of the kitchen knife used during the offenses revealed the victim's DNA and the Petitioner's fingerprints. The Petitioner said that after he pleaded guilty, he learned the knife did not contain his fingerprints. The Petitioner said that he was "spaced out" and "high" at the time of the offenses and that he was unsure what evidence the knife might have contained. The Petitioner stated that counsel gave him a copy of the discovery materials on the day of the guilty plea hearing and that he did not have time to review the materials before entering his guilty pleas.

The Petitioner testified that he and counsel initially reviewed the discovery materials in the jail visitation room and that they were separated by glass. The Petitioner denied reviewing the materials personally before the guilty plea hearing. The Petitioner said that counsel provided him copies of the Petitioner's and the Petitioner's wife's police statements but that nothing else from the discovery materials was provided to him until the day of the guilty plea hearing. The Petitioner stated that he vaguely remembered giving a police statement because he was intoxicated at the time of his arrest. The Petitioner stated that he did not request counsel file a motion to suppress his police statement and that he did not recall counsel's filing a motion to reduce bail.

The Petitioner testified that on the day of the guilty plea hearing, he and counsel met in the courtroom for two minutes before he "signed the paper" and the hearing began. The Petitioner said that at the time of the hearing, he believed he understood the evidence against him but that after his personal review of the discovery materials, he determined, without specification, that the materials and counsel's discussion of the materials were inconsistent. The Petitioner said that he pleaded guilty based upon counsel's explanation of the discovery materials and that if he had known all of the information contained in the discovery, he would not have pleaded guilty. He said his decision to plead guilty was not informed because he lacked information contained in the discovery materials.

On cross-examination, the Petitioner testified that he was not intoxicated at the guilty plea hearing and that he understood the charges, the terms of the plea agreement, and the possible sentences of the offenses to which he pleaded guilty. The Petitioner said that he understood he did not receive the maximum sentence for especially aggravated robbery, a Class A felony, and that the plea agreement resulted in the dismissal of two

misdemeanor charges. The Petitioner disputed that he had fifteen previous felony convictions but agreed that he had at least six previous felony convictions. He said that if he had been convicted after a trial, the sentence for especially aggravated robbery would have been Range II, which was between twenty-five and forty years at 100% service. He agreed that his sentence for the especially aggravated robbery conviction was twenty-years. He agreed the possible sentence after a trial was twice as much as the negotiated twenty-year sentence and said counsel explained the sentencing ranges and possible sentencing outcomes. The Petitioner said that counsel also explained that the trial court might impose consecutive service, resulting in an estimated sentence of sixty years.

The Petitioner testified that he and counsel discussed his rights to a trial, to subpoena witnesses, and to testify, and the Petitioner noted that he knew his rights because he had "a pretty extensive record" and had "heard them all" previously. He said that he was familiar with the criminal justice system and understood everything counsel explained to him. The Petitioner said that although he understood the plea agreement, he had not seen all of the evidence before the guilty plea hearing. He agreed he told the trial court that he had reviewed all the evidence but said counsel "leafed through" counsel's file when they discussed the discovery materials at the jail. The Petitioner said that he relied on counsel and assumed he had seen the relevant evidence. When questioned about the Petitioner's statement to the trial court that he and counsel had reviewed all of the discovery materials, the Petitioner said, "That would have [taken] two days." The Petitioner said that counsel reviewed the materials and showed some things to the Petitioner but that they did not review "every little detail." The Petitioner said that after he personally reviewed the discovery materials, he realized counsel had not discussed everything with him.

The Petitioner testified that at the time of the guilty plea hearing, he had no complaints about counsel and that he thought he was satisfied with counsel's work. The Petitioner said that the State's plea offer was always twenty years at 100% service. He said that if he had reviewed the discovery materials personally, he would have rejected the plea offer and gone to trial. He agreed he attempted to negotiate a beneficial plea offer for his wife.

The Petitioner testified that he did not commit especially aggravated robbery and that he committed perjury when he said he was guilty of especially aggravated robbery at the guilty plea hearing. He said that the State was not going to extend a more favorable plea offer and that he accepted it because he faced forty to sixty years if he did not plead guilty to an offense he did not commit. He said he accepted twenty years rather than face forty to sixty years because he mistakenly thought the State possessed fingerprint evidence. He said he did not understand the evidence against him.

-4-

The Petitioner said that although counsel reviewed the Petitioner's, the victim's, and the Petitioner's wife's police statements, counsel did not provide him photographs of the crime scene. The prosecutor confirmed the State provided the defense with forty to fifty photographs of the scene and of the victim. When asked if the Petitioner told the police that he threw the victim's wallet in a dumpster at a Morristown Weigel's convenience store, the Petitioner conceded he threw the wallet in the dumpster but denied taking it from the victim. The Petitioner alleged his wife took the victim's wallet.

On redirect examination, the Petitioner testified that he reviewed his wife's first police statement but that, at the time of the guilty plea hearing, he had not reviewed his wife's second police statement, which she provided about three weeks after their arrests. He said that after reading her second statement, his understanding of the facts changed.

Counsel testified that he had practiced criminal law for twenty-eight years, that his representation in this case began around April 30, 2015, that he first met the Petitioner on May 1, and that he would have asked for the Petitioner's version of events, inquired about the Petitioner's criminal history, and advised the Petitioner about the possible sentence within each sentencing range. Counsel said that during the May 1 meeting, he had neither the discovery materials nor the Petitioner's official criminal history and that the Petitioner advised his sentence for a previous conviction had been Range II. Counsel said that based upon this information, counsel assumed during the meeting that the Petitioner would receive a Range II sentence in this case.

Counsel testified that on May 13, 2015, he received the discovery materials and that he and the Petitioner reviewed the materials on May 18. Counsel said that generally, his meetings with a client who was in jail occurred in a visitation booth in which he and the client were separated by glass. He said that he read verbatim the discovery materials to the client, including the client's and the witnesses' statements, any waiver of rights form, and the accusations against the client. He said that he might not read background and physical description information but that he read each page contained in the materials. He said that, relative to a waiver of *Miranda* rights form, he read the form to the client, showed the form to the client, and asked if the form reflected the client's signature. Counsel said that he followed this procedure in the Petitioner's case and that although he did not recall the Petitioner's asking specific questions, they would have discussed the contents of the discovery materials. Counsel did not recall whether he and the Petitioner reviewed photograph evidence and said that if the materials contained a disc, the Petitioner's ability to view it would have depended on whether counsel brought his laptop to the jail. Counsel said that he did not recall anything significant in the photographs.

Counsel testified that he and the Petitioner discussed the Petitioner's rights to remain silent, to a jury trial, and to subpoena and to confront witnesses and that they discussed the Petitioner's privilege against self-incrimination. Counsel did not recall

filing a motion to reduce the Petitioner's bond. Although counsel did not recall the amount of the Petitioner's bond, he said the general sessions court judge generally set the amount "pretty low." Counsel did not recall the Petitioner's requesting a lower bond. Counsel said that if he had addressed the Petitioner's bond, the trial court judge might have increased it.

Counsel testified that he and the Petitioner reviewed the State's potential witnesses, that counsel did not interview the Petitioner's wife because she was represented by counsel, and that counsel did not interview the victim because the victim provided a detailed police statement. Counsel did not recall the Petitioner's identifying anyone who counsel might interview or who might have been a potential defense witness. Counsel said the Petitioner, the Petitioner's wife, and the victim were the only people present during the offenses. Counsel said that he and the Petitioner would have discussed potential defenses and that counsel did not recall the Petitioner's stating he was intoxicated at the time of his police interview. Counsel said that after his initial meeting with the Petitioner, their discussions focused on the Petitioner's desire for his wife to receive probation for a reduced charge. Counsel noted that the Petitioner appeared more interested in the outcome of the Petitioner's wife's case than discussing the facts or circumstances of the offenses.

Counsel testified that the State's initial plea offer was twenty years as a Range I, standard offender, which was below the Petitioner's sentencing range. Counsel said that the Petitioner wanted counsel to attempt to negotiate a fifteen-year plea agreement, that counsel negotiated with the prosecutor, and that the prosecutor would not agree to a sentence that was less than twenty years because the prosecutor had agreed to a Range I sentence. Counsel said that the Petitioner's misdemeanor charges were dismissed. Counsel said that the Petitioner's wife's charges were reduced and that she received a three-year sentence in confinement. Counsel recalled that the prosecutor was unwilling to accept an offer in which the Petitioner's wife received probation.

On cross-examination, counsel testified that he reviewed discovery materials with all his clients in the same manner and recalled that he followed his usual practice in the Petitioner's case. Counsel said that the Petitioner's discovery materials were about one inch thick, that the materials included the victim's medical records, and that although he did not recall the amount of time he spent reviewing the materials with the Petitioner, the review "takes as long as it takes." Counsel did not dispute that the jail visitation log showed he visited the Petitioner three times. Counsel said that during the May 18 visit, he and the Petitioner discussed the discovery materials. Counsel said that although he did not recall the number of witness statements contained in the discovery materials, he read every statement to the Petitioner during the May 18 meeting.

After receiving the proof, the post-conviction court denied relief. The court discredited the Petitioner's testimony, after determining that the Petitioner admitted committing perjury at the guilty plea hearing. The court found that the Petitioner's testimony relative to counsel's misleading the Petitioner about the evidence in the discovery materials was not credible. The court determined that the guilty plea hearing transcript reflected that counsel reviewed the discovery materials with the Petitioner, that the Petitioner understood the evidence, and that the State's recitation of the facts was "close enough to be a fair statement." The court determined that counsel investigated the case, reviewed all of the discovery materials with the Petitioner, and explained the possible defenses and the Petitioner's rights. The court found that counsel negotiated the best possible plea agreement and that the Petitioner admitted at the post-conviction hearing that he could have received a forty-year sentence after a trial. The court determined that the Petitioner received the effective assistance of counsel and that the Petitioner's guilty pleas were voluntarily and knowingly entered. This appeal followed.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

## I.    Ineffective Assistance of Counsel

The Petitioner contends that he received the ineffective assistance of counsel. He argues that counsel's failure to provide him with a complete copy of the discovery materials and with sufficient time to review the materials was deficient performance and that counsel's deficiency resulted in his pleading guilty without understanding the evidence against him. The State responds that the post-conviction court did not err by denying relief. We agree with the State.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Counsel's credited testimony at the post-conviction hearing reflects that he reviewed all of the discovery materials with the Petitioner. Counsel testified that he read verbatim the discovery materials to the Petitioner at the jail three days after counsel received the materials. The Petitioner testified that during counsel's review of the discovery materials, counsel stated a forensic analysis showed the Petitioner's fingerprints on the knife used against the victim but that the Petitioner learned after the guilty plea hearing that the weapon did not contain the Petitioner's fingerprints. The Petitioner also testified, generally, that his review of the materials after pleading guilty showed "inconsistencies" from what counsel had explained previously. However, the post-conviction court discredited the Petitioner's testimony. Furthermore, counsel was not questioned at the evidentiary hearing about any forensic evidence contained in the discovery materials, and the Petitioner did not present any forensic evidence allegedly contained in the materials. The guilty plea hearing transcript reflects that the Petitioner stated he had reviewed the discovery materials with counsel and that the State's recitation of the facts was "close enough" to what occurred during the offenses. The record supports the post-conviction court's determination that the Petitioner did not receive the ineffective assistance of counsel. The Petitioner is not entitled to relief on this basis.

## II. Involuntary Guilty Plea

The Petitioner contends that his guilty pleas were involuntarily and unknowingly entered because counsel failed to provide him with all of the discovery materials. The Petitioner has not identified the evidence which was allegedly excluded from the

materials reviewed at the jail. However, based upon the Petitioner's focusing on fingerprint evidence at the evidentiary hearing, we presume the relevant evidence relates to fingerprints on the knife used during the offenses. The State responds that the post-conviction court did not err by denying relief. We agree with the State.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record reflects that the Petitioner entered knowing, intelligent, and voluntary guilty pleas. The Petitioner's post-conviction testimony is the only evidence in the record related to forensic evidence of the knife. The discovery materials are not included in the appellate record, and counsel was not questioned at the evidentiary hearing about any forensic evidence implicating the Petitioner. The post-conviction court discredited the Petitioner's testimony.

The guilty plea hearing transcript reflects that, upon questioning by the trial court, the Petitioner did not express concern about counsel's competence and did not inform the court that he felt coerced into pleading guilty because he had not reviewed all of the State's evidence. The Petitioner told the court that he understood the plea agreement and the rights he waived by pleading guilty, that he was satisfied with counsel's performance, that he had reviewed the discovery materials with counsel, and that he felt comfortable entering his guilty pleas. The Petitioner, likewise, told the court that the State's factual recitation was "close enough" to what occurred during the offenses. We conclude that the record supports the post-conviction court's determination that the Petitioner entered knowing, intelligent, and voluntary guilty pleas. The Petitioner failed to prove he is entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE